IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GENERAL ELECTRIC COMPANY,

Plaintiff,

v.

SIEMENS ENERGY, INC.,

Defendant.

Case No. 3:21-cv-00025 (JAG)

**MEMORANDUM OF LAW IN SUPPORT OF GENERAL ELECTRIC COMPANY'S
MOTION TO COMPEL SIEMENS ENERGY, INC.'S DISCOVERY RESPONSES**

Dana D. McDaniel (VSB No. 25419)
Edward E. Bagnell, Jr. (VSB No. 74647)
Spotts Fain, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2000
Fax: (804) 697-2100
dmcdaniel@spottsfain.com
ebagnell@spottsfain.com

Brad S. Karp (*pro hac vice*)
Brette Tannenbaum (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
bkarp@paulweiss.com
btannenbaum@paulweiss.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300
kdunn@paulweiss.com
jrhee@paulweiss.com

*Attorneys for Plaintiff General Electric Company*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

    A.    Siemens' misappropriation of GE's trade secrets is undisputed. ............................ 2

    B.    Siemens has made numerous conflicting representations about its investigative and remedial measures to defend itself from GE's claims and shape the scope of discovery ................................................................................ 3

    C.    GE has repeatedly sought to obtain discovery into Siemens' investigative and remedial efforts, which Siemens has sought to shield on the basis of privilege. ............................................................................................................. 7

    D.    Siemens is selectively asserting privilege over its investigative and remedial measures as both sword and shield. ........................................................ 8

ARGUMENT ...................................................................................................................... 12

    A.    Even if an applicable privilege attaches, Siemens has waived that privilege through its selective disclosures ............................................................. 14

    B.    Even if the Court concludes that the documents at issue are work product and that Siemens has not waived the work-product privilege, GE has a "substantial need" for any fact work product at issue .......................................... 17

    C.    Siemens' claim that collecting and producing documents from its employees and agents who spearheaded its investigation and remediation efforts would be unduly burdensome lacks merit. ..................................................... 20

    D.    The scope of GE's request is targeted to documents and information about Siemens' internal investigation and remedial measures, not privileged materials about Siemens' litigation strategy. ....................................................... 21

CONCLUSION ................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*F.T.C.* v. *Boehringer Ingelheim Pharms., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015) ................................................................................19

*Chevron Corp.* v. *Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ...............................................................................13

*E.I. Dupont de Nemours & Co.* v. *Kolon Indus., Inc.*,
   269 F.R.D. 600 (E.D. Va. 2010) ........................................................................13, 18

*ePlus Inc.* v. *Lawson Software, Inc.*,
   280 F.R.D. 247 (E.D. Va. 2012) ............................................................................13

*Fed. Election Comm'n* v. *Christian Coal.*,
   178 F.R.D. 61 (E.D. Va. 1998) ..............................................................................18

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*,
   401 F.3d 247 (4th Cir. 2005) .................................................................................17

*In re Grand Jury Proc.*,
   219 F.3d 175 (2d Cir. 2000)....................................................................................13

*In re Grand Jury Proceedings*,
   727 F.2d 1352 (4th Cir. 1984) ...............................................................................14

*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
   750 F.2d 223 (2d Cir. 1984)....................................................................................12

*In re Grand Jury Subpoenas*,
   902 F.2d 244 (4th Cir. 1990) .................................................................................14

*Hawkins* v. *Stables*,
   148 F.3d 379 (4th Cir. 1998) .......................................................................12, 13, 14

*United States v. Jones*,
   696 F.2d 1069 (4th Cir. 1982) ...........................................................................13, 14

*In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*,
   348 F.3d 16 (1st Cir. 2003).....................................................................................17

*United States ex rel. Mayman v. Martin Marietta Corp.*,
   886 F. Supp. 1243 (D. Md. 1995)...........................................................................13

*United States* v. *Oloyede*,
　　982 F.2d 133 (4th Cir. 1993) ...................................................................................14

*Parkdale Am., LLC* v. *Travelers Cas. & Surety Co. of Am.*,
　　No. 3:06CV78-R, 2007 WL 4165247 (W.D.N.C. Nov. 19, 2007)............................................2

*Rambus, Inc.* v. *Infineon Techs. AG*,
　　220 F.R.D. 264 (E.D. Va. 2004) ...................................................................................13, 14

*RCA/Ariola Int'l, Inc.* v. *Thomas & Grayston Co.*,
　　845 F.2d 773 (8th Cir. 1988) ...................................................................................13

*Stoney Glen, LLC* v. *S. Bank & Trust Co.*,
　　No. 2:13cv8-HCM-LRL, 2013 WL 5514293 (E.D. Va. Oct. 2, 2013)...................................20

*Zeus Enters, Inc.* v. *Alphin Aircraft, Inc.*,
　　190 F.3d 238 (4th Cir. 1999) ...................................................................................13

**Statutes**

Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b), 1839...................................................2

Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, *et seq.* ................................................2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...................................................................................20

Fed. R. Civ. P. 26(b)(3)...................................................................................18

Fed. R. Civ. P. 37(a) ...................................................................................1

## PRELIMINARY STATEMENT

Plaintiff General Electric Company ("GE"), by its counsel, respectfully seeks an Order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling Defendant Siemens Energy, Inc. ("Siemens") to collect and produce documents concerning Siemens' investigative and remedial measures from the employees and outside counsel responsible for those efforts.

Siemens has put its investigative and remedial measures at issue in this litigation by repeatedly wielding them as a sword—in letters, in filings, and in sworn declarations—to represent to this Court and to GE that those measures foreclose relief to GE. Having done so, Siemens has waived any privilege that may have attached to documents or information concerning its investigative and remedial efforts. Notwithstanding its waiver of privilege, Siemens now seeks to improperly shield—behind assertions of privilege—documents and inquiries made by investigators, and facts told by key witnesses to those investigators. This is particularly problematic given that the discovery taken so far has cast serious doubt on the scope and sufficiency of Siemens' investigative and remedial measures. Siemens' efforts to shield its investigative documents behind assertions of privilege—while its witnesses simultaneously plead ignorance and memory loss about their actions—is a deliberate effort to prevent GE and this Court from ascertaining the full scope of Siemens' misconduct, the sufficiency of its remediation efforts, and the necessity for relief in this case. Moreover, Siemens' attempts to shield and delay producing information about its internal investigation and remedial measures is prejudicial to GE because fact discovery will end on September 10, 2021—less than four weeks from now.

Siemens has elected to rely upon the alleged thoroughness of its investigation and the efficacy of its remedial measures as a defense to GE's claims here. It cannot then use privilege claims to deny GE discovery regarding these very topics. GE respectfully requests that the Court

1

order Siemens to collect and produce documents about those measures—including but not limited to interview memoranda, reports about the investigation's factual findings, and summaries of remedial steps taken (or not taken)—from Siemens' investigators' files.  In making this request, GE is seeking only those documents necessary for determining the scope of Siemens' misappropriation of GE's trade secrets, the scope of Siemens' investigation, the sufficiency of Siemens' remedial measures, and the accuracy of Siemens' statements related to those topics.

## BACKGROUND

### A.    Siemens' misappropriation of GE's trade secrets is undisputed.

GE's Complaint asserts that Siemens misappropriated GE's highly confidential trade secret information concerning GE's gas turbines under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836(b), 1839, and the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336, *et seq.*  (*See generally* Compl., ECF No. 1.)

These allegations have been confirmed by Siemens' own document productions and discovery responses.  Siemens now admits that at least *37* of its employees received GE's trade secrets and at least *54* Siemens employees had access to them.  (PI Opp. Ex. 1, Nov. 27, 2020 Letter from Saul B. Shapiro at 9–11, ECF No. 43-3; Declaration of James Bedont ("Bedont Decl.") Ex. A, ECF No. 43-1; PI Reply Ex. 55, Mar. 22, 2021 Email from Patrick Haney, ECF No. 53-3.) Siemens' documents reveal that its employees used GE's confidential pricing information to adjust Siemens' bid price for the Dominion Peakers Project downward to undercut GE's bid, and that approval for that price adjustment was obtained at the highest levels of Siemens' organization.  (PI Mot. Exs. 30–31, 37–38, 43, 53, ECF Nos. 34-10, 34-11, 34-17, 34-18, 34-23, 34-33.)  It is undisputed that Siemens continued to use GE's trade secrets even after the Peakers Project bid, including in connection with a later gas turbine contract with Florida Power & Light in June 2019. (PI Mot. Exs. 4, 31, 48, 53, ECF Nos. 32-7, 32-8, 34-11, 34-28, 34-33.)  And it is undisputed that

Siemens terminated just six of the dozens of employees who accessed GE's trade secrets, while retaining the most senior and most culpable wrongdoers—including Michael Hillen (the person who initially solicited, received, and disseminated GE's confidential information), Mehran Sharifi, Karim Amin, Tim Holt, and Michael Becker—and actually promoting Holt to the Executive Board of Siemens' parent company, Siemens Energy AG.  (Siemens Answer at 3, ECF No. 40; PI Reply Ex. 55, Mar. 22, 2021 Email from Patrick Haney, ECF No. 53-3.)

> **B.     Siemens has made numerous conflicting representations about its investigative and remedial measures to defend itself from GE's claims and shape the scope of discovery.**

GE's efforts over the past eleven months to piece together the facts in this case have been obstructed by Siemens' inadequate, dilatory, and misleading representations about the scope of Siemens' misconduct, its subsequent internal investigation, and its remedial measures.

Siemens' misappropriation of GE's trade secrets began in May 2019, but Siemens waited 16 months before notifying GE that it was in possession of GE's confidential information, representing only that it first "discovered" the misappropriation during an unrelated "internal review" in 2020.  (PI Opp. at 8, ECF No. 43; Am. Ans. ¶ 99, ECF No. 48.)  In that initial September 2020 disclosure, Siemens claimed that it took "appropriate employee disciplinary actions" in response to its misappropriation of GE's trade secrets (PI Mot. Ex. 18, Sep. 14, 2020 Letter from Denise Hansen, ECF No. 32-22),[1] but for months it refused—apparently on privilege grounds—to tell GE which employees it terminated, waiting until March 2021 to reveal that it terminated only six of the dozens of Siemens employees who received GE's confidential information.  (Am. Ans. at 3, ECF No. 48; PI Reply Ex. 55, Mar. 22, 2021 Email from Patrick Haney, ECF No. 53-3.)  To

---

[1] Siemens' September 2020 letter is dated August 28 but was not received by GE until September 14, 2020.

this day, why Siemens chose to terminate those—and only those—six employees remains a mystery cloaked in claims of privilege.

Siemens also represented in September 2020 that it had "sequestered and removed" GE's confidential information, such that "any employee who had access to the GE information cannot access or use the information in future projects." (PI Mot. Ex. 18, Sep. 14, 2020 Letter from Denise Hansen, ECF No. 32-22.) The next month, Siemens further represented—in an under-oath October 29, 2020 declaration—that its removal process, which included "screen share sessions in which we directed the employees to complete the deletion process in our presence," was "now complete." (PI Mot. Ex. 21, Declaration of Jocelyn Lam ("Lam Decl.") at 17 ¶¶ 29–30, ECF No. 32-25.) Yet Siemens' own documents show that its screen share sessions continued long after that date. The screenshot of ███████████████████████ shows that ███ ████████████████████████████████████████████████████████████████ ██████████████ after Siemens represented that its remedial screen share sessions were complete. (PI Mot. Ex. 44, ECF No. 34-24.) Siemens later disclosed that those share screen sessions continued through at least *April 2, 2021*. (Declaration of Brette Tannenbaum ("Tannenbaum Decl.") Ex. 1, Siemens R&Os to GE's 1st Set of Interrogs. at 3–5.) In fact, 36 of the screen share sessions Siemens has reported to date occurred after Siemens' under-oath October 2020 declaration, and 23 occurred after GE filed its Complaint on January 14, 2021. (Tannenbaum Decl. Ex. 22, Siemens' Suppl. R&Os to GE's Interrog. No. 2 at 2–5.) Whether and to what extent GE's trade secrets have been truly and properly eradicated from Siemens' systems therefore also remain a mystery cloaked in claims of privilege.

Moreover, recently produced evidence suggests that Siemens' disclosures about the scope of its misconduct and the sufficiency of its remediation *remain* incomplete. Siemens' July

30, 2021 production includes what appears to be a ██████████████████████████

████████████████████████████████████████████████████████████████████████,

whom Siemens had never before identified as having received GE's misappropriated information

or having been subject to its remedial measures—████████████████████████████████

████████████████████████████████████████████████████.[2] (Tannenbaum

Decl. Ex. 2, SEI_GE-0010648.) ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ (*Id.*; Tannenbaum Decl. Ex. 3, SEI_GE-

0010744.)  The document even ████████████████████████████████████

████.  (Tannenbaum Decl. Ex. 2, SEI_GE-0010648.)  Worse still, ████████████████

████████████████████████████████████████████████████████████

████████████████—who also were never before disclosed to GE as having received or having

access to GE's trade secrets or having been subject to remedial measures.  (Tannenbaum Decl. Ex.

4, SEI_GE-0010681.)  And a screenshot of the document's properties reveals that ████████

████████████████████████████████████.  (Tannenbaum  Decl.  Ex.  3,  SEI_GE-

0010744.)  These revelations cast serious doubt on the veracity of Siemens' prior representations

---

[2] In a previously produced Siemens document, a Siemens employee expressly stated that ████████████
████████████████████████████████████████████████ (Tannenbaum Decl.
Ex. 21, SEI_GE-0006763.)

about the reach of its misappropriation of GE's confidential information and the sufficiency of its remedial process.[3]

Siemens' representations about the scope of the employee "firewall" needed to prevent the proliferation of GE's trade secrets throughout the company have also shifted. In October 2020, Siemens agreed to wall off employees only from F-class turbine projects (PI Mot. Ex. 21, Oct. 30, 2020 Letter from Saul B. Shapiro at 3, ECF No. 32-25), a position from which it initially refused to budge (PI Opp. Ex. 1, Nov. 27, 2020 Letter from Saul B. Shapiro at 2–3, ECF No. 43-3), even though ███████████████████████████████████████████████████████ ██████████████████.[4] (PI Mot. Exs. 23, 44, ECF Nos. 34-3, 34-24.) GE was therefore forced to file a Motion for a Preliminary Injunction on February 1, 2021, seeking an extension of that firewall. Then, inexplicably, on February 10, 2021, months after Siemens represented its remediation was "complete," Siemens indefinitely firewalled 22 employees—including *17 additional employees never before identified to GE*—from F-class, H-class, and aeroderivative projects. (Bedont Decl. Ex. A, ECF No. 43-1.) Siemens did not reveal the existence of this additional firewall to GE until March 9, 2021, and provided no explanation for backtracking on its

---

[3] Just last week, following the production of the ███████████████████████ described above, Siemens disclosed the existence of *40 additional screen share sessions* involving *22 more employees*. (*Compare* Tannenbaum Decl. Ex. 22, Siemens' Suppl. R&Os to GE's Interrog. No. 2 at 2–5, *with* Ex. 1, Siemens R&Os to GE's 1st Set of Interrogs. at 3–5.) Conspicuously absent from Siemens' expanded screen share list are ████████████████████ ██████████████████████████████████████████████████ ██████████████. (Tannenbaum Decl. Ex. 22.)

[4] Michael Hillen, the employee who originally solicited, received, and disseminated GE's trade secrets from Dominion, ██████████████████████████████████████████████ ███████, but Siemens' recently produced documents show that Hillen ████████████ █████████████████████████████—months after Siemens represents that it discovered the misappropriation of GE's trade secrets—and ██████████████████████████████ ████████████████. (*See* Tannenbaum Decl. Exs. 5–7, SEI_GE-0000034, SEI_GE-0014923, SEI_GE-0013260.)

earlier position that its initial firewall was sufficient.  (*See id.*)  Nor has Siemens yet explained to

GE why employees like ████████████████████████ were never subject to any such

firewall or other remedial or disciplinary measures.

     **C.**     **GE has repeatedly sought to obtain discovery into Siemens' investigative and remedial efforts, which Siemens has sought to shield on the basis of privilege.**

Because the scope and sufficiency of Siemens' investigative and remedial efforts

are at the heart of Siemens' proffered defenses in this case, GE has propounded numerous requests

for documents that would allow both GE and the Court to determine the veracity of Siemens'

efforts:

     7.     All Documents and Communications concerning disciplinary measures imposed on Your Employees in connection with GE's Peakers Project Bid Information.

     8.     Documents and Communications sufficient to show (i) why ████ ████████ were terminated, and (ii) why You did not terminate any other of Your Employees who transmitted, disclosed, received, analyzed, reviewed, or discussed GE's Peakers Project Bid Information, including, Michael Hillen, Mehran Sharifi, Karim Amin, Tim Holt, and Michael Becker.

     12.     Documents or Communications sufficient to identify how and when You determined which of Your Employees possessed, accessed, transmitted, disclosed, received, analyzed, reviewed, or discussed GE's Peakers Project Bid Information concerning the ████████████████████ ████████████.

     13.     All Documents and Communications concerning the "internal review" referenced in Paragraph 99 of the Amended Answer.

     14.     All Documents and Communications concerning screen share sessions You conducted as part of Your investigation of Your Employees' access, transmission, disclosure, receipt, analysis, discussion, and use of GE's Peakers Project Bid Information, including the screen share session bearing Bates number SIEMENER_GEPROD0000043.

     16.     All Documents and Communications concerning the Expanded Firewall, including any Documents or Communications concerning the reasons for implementing the Expanded Firewall and the timing thereof.

17.    Documents and Communications sufficient to show the basis for the ███████████████████████████████████ concerning the ████ ████████████████████████████████████████.

38.    All Documents and Communications concerning the "remedial actions," including "appropriate employee disciplinary actions, team reorganization, group and individual-directed training, and counseling of all impacted employees," referenced in Your letter to GE attached as Exhibit A to GE's Complaint.

39.    All Documents and Communications concerning the "group and individual training and counsel to reinforce Siemens' Business Conduct Guidelines" referenced in Exhibit A to Your letter to GE attached as part of Exhibit 21 to GE's February 1, 2021 Motion for a Preliminary Injunction.

(Tannenbaum Decl. Exs. 8–9, GE's 1st and 2d Sets of RFPs.)

Nevertheless, and despite GE's efforts to meet and confer regarding its requests, Siemens continues to withhold these crucial documents.  In an effort to delay discovery into these critical areas, Siemens has alternated between offers to produce limited "relevant" documents and refusals on privilege grounds to even search through the files of the custodians who possess them. (Tannenbaum Decl. Exs. 10–11, Siemens R&Os to GE's 1st and 2d Sets of RFPs; Ex. 12, June 12, 2021 Letter from Brette Tannenbaum at 4–5; Ex. 13, June 24, 2021 Letter from Patrick Haney at 4–5.)  On the parties' July 29 meet and confer, Siemens ultimately confirmed its position that the relevant documents of the persons responsible for conducting Siemens' internal investigations and imposing remedial actions are all privileged, and Siemens refuses to collect, produce, or even log those individuals' documents.  (Tannenbaum Decl. Ex. 14, July 29, 2021 Email from Edward Babbitt at 2.)

**D.    Siemens is selectively asserting privilege over its investigative and remedial measures as both sword and shield.**

Siemens has wielded privilege as both sword and shield in this case by making repeated (though contradictory) representations about the scope and sufficiency of its internal

investigation and remedial measures while simultaneously refusing to produce the investigative documents that are necessary to verify or challenge the accuracy of those representations.

Siemens insists that it is not preemptively asserting privilege over the subject matter of its investigative and remedial efforts because it has not categorically refused to produce non-privileged documents from the ***targets*** of the investigation (and other custodians who are unlikely to possess the relevant investigative documents).[5]  (*E.g.*, Tannenbaum Decl. Ex. 16, July 29, 2021 Email from Mark Gruetzmacher at 1–2; Ex. 17, August 4, 2021 Email from Alexandra I. Russell at 2.)  But this is a distinction without a difference:  Siemens' privilege assertions at the depositions conducted to date make clear that Siemens will not permit its witnesses to testify about its investigation or remedial measures—at least when Siemens' counsel anticipates that the testimony could be unfavorable—and there is no reason to believe that Siemens will be any more forthcoming in its document productions.

For instance, at the August 3, 2021 deposition of Siemens' employee Adam Herlitzka, Siemens' counsel allowed questioning into certain aspects of Siemens' investigation while selectively asserting privilege to wall off questioning that might poke holes in Siemens' representations about the sufficiency of its investigative and remedial measures.  For example, Siemens' counsel permitted Mr. Herlitzka to testify about certain communications that occurred during its (purportedly privileged) screen share sessions with Siemens' investigators—including both the contents of the questions Mr. Herlitzka was asked and the contents of his answers to those questions.  (*E.g.*, Tannenbaum Decl. Ex. 18, Herlitzka Dep. Tr. 235:11–24 (" ███████████████

████████████████████████████████████████████████████████████

---

[5] John Gibson—████████████████████████████████████████—
      testified that ████████████████████████████████████████.
      (Tannenbaum Decl. Ex. 15, Gibson Dep. Tr. 203:17–22.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ”), 236:25–237:7, 237:17–238:2.)  But when GE asked

other questions about communications that occurred during the same share screen sessions,

Siemens' counsel selectively instructed Mr. Herlitzka not to answer.  (*Id.* at 235:25–236:3

("████████████████████████████████████████████████

████████████████████████████████████████ "), 236:13–16,

238:14–239:5 ("████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ ")).   In other words, after having used its

screen share sessions as a sword in this litigation to claim that its remedial efforts were sufficient,

Siemens permitted Mr. Herlitzka to testify about the communications where it expected his

answers to be consistent with that narrative, but asserted privilege as a shield to prevent GE from

seeking related information about the very same communications.

Siemens' misuse of privilege as sword and shield is not limited to information about

its screen share sessions.  Siemens has wielded the purported findings of its investigations as a

sword to make numerous representations to attempt to minimize its misconduct, claiming to GE

(among other things) that there was no *quid pro quo* between Siemens and Dominion (PI Mot.

Ex. 18, Sep. 14, 2020 Letter from Denise Hansen, ECF No. 32-22), that Siemens was not aware

of employees receiving confidential GE information for projects other than the Peakers Project (PI

Opp. Ex. 1, Nov. 27, 2020 Letter from Saul B. Shapiro at 3–4, ECF No. 43-3), and that Siemens

did not solicit GE's confidential information from Dominion (PI Mot. Ex. 21, Oct. 30, 2020 Letter

from Saul B. Shapiro at 3–4, ECF No. 32-25).  But at Mr. Herlitzka's deposition, Siemens refused

to allow Mr. Herlitzka to answer questions that would reveal whether these representations had a good-faith basis.  (Tannenbaum Decl. Ex. 18, Herlitzka Dep. Tr. 252:2–9, 282:6–283:5.)  That Siemens would so limit Mr. Herlitzka's testimony on privilege grounds is remarkable, given that when GE asked Mr. Herlitzka whether he understood the GE confidential information to be information to which he should not and would not normally have access, he would not directly answer the question and responded only that *Siemens' legal team* did not want him to have that information.  (*Id.* at 17:12–18:2, 19:7–14.)

A similar pattern emerged during the deposition of Michael Hillen, which occurred the next day.  Mr. Hillen repeatedly expressed ignorance or memory loss when asked about what he and other Siemens employees did with GE's confidential information.  (*E.g.*, Tannenbaum Decl. Ex. 19, Hillen Dep. Tr. 49:17–51:21 (failing to explain the inconsistency between his testimony that ███████████████████████████████████████████████████████████ and his previous under-oath testimony that he "███████████████████████████████████ ███████████████" (emphasis added)); 54:5–59:9 ("█████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████"); 69:3–11 ("████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

███████████████████")).  But when asked about what he told Siemens' investigators about the same subjects previously when his memory was fresher, Siemens asserted privilege and instructed him not to answer.  (*Id.* at 269:8–274:5.)[6]

The effect of Siemens' refusal to collect and produce documents from the employees and counsel responsible for its investigative and remedial efforts is not minor, particularly when coupled with Siemens' refusal to allow its witnesses to testify about those efforts at deposition and the refusal of Siemens' witnesses to provide straightforward answers about their own conduct under oath.  Siemens' stonewalling about its investigative and remedial measures seriously undermines GE's ability to prosecute its case against Siemens, particularly because fact discovery will close in four weeks.  As explained below, Siemens' objections are designed to delay, selectively shape the record, and hinder both GE's and the Court's ability to assess claims and issues vital to this case.  Siemens should not be permitted to use its investigative and remedial measures as a sword in this litigation while simultaneously asserting privilege over the very documents that would allow GE to test the scope and sufficiency of those measures.

GE's motion to compel should be granted.

## ARGUMENT

It is "axiomatic" that the party asserting a privilege—here, Siemens—has the burden of proving that the privilege applies by establishing both that (1) the specific communications at issue are privileged and (2) the privilege has not been waived.  *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984); *accord Hawkins* v.

---

[6] At the deposition of former Siemens employee John Gibson, Siemens' counsel also asserted privilege over the evidence presented during Mr. Gibson's interview with investigators in early May 2020, which occurred at or near the onset of Siemens' investigation.  (Tannenbaum Ex. 15, Gibson Dep. Tr. 187:23–188:25, 190:4–191:9.)

*Stables*, 148 F.3d 379, 383 (4th Cir. 1998); *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982); *Zeus Enters, Inc.* v. *Alphin Aircraft, Inc.*, 190 F.3d 238, 244 (4th Cir. 1999).  With respect to the work-product privilege, the proponent must show, as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation.  *Rambus, Inc.* v. *Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004) (citing *Hickman* v. *Taylor*, 329 U.S. 495 (1947)).

Further, it is well-established in this Circuit that "when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter."  *Jones*, 696 F.2d at 1072; *Hawkins*, 148 F.3d 379 at 384 n.4.  This rule prevents "[s]elective disclosure for tactical purposes."  *Jones*, 696 F.2d at 1072; *accord ePlus Inc.* v. *Lawson Software, Inc.*, 280 F.R.D. 247, 256 (E.D. Va. 2012).  As a matter of fundamental fairness, a party cannot partially disclose privileged attorney-client communications as a sword in support of that party's position and also rely on privilege to shield its remaining underlying communications from scrutiny.  *See, e.g.*, *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000); *Chevron Corp.* v. *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *RCA/Ariola Int'l, Inc.* v. *Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988).  The same principles apply to waiver of work-product protection.  *E.I. Dupont de Nemours & Co.* v. *Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010); *United States ex rel. Mayman v. Martin Marietta Corp.,* 886 F. Supp. 1243, 1252 (D. Md. 1995).

Thus, the attorney-client and work-product privileges are narrowly construed and recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."  *Hawkins*, 148 F.3d at 383 (quoting *Trammel v. United States,* 445 U.S. 40, 50 (1980));

*accord United States* v. *Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993); *In re Grand Jury Subpoenas*, 902 F.2d 244, 248 (4th Cir. 1990); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984); *Rambus*, 220 F.R.D. at 282.

Siemens has come nowhere close to meeting its burden of establishing that the attorney-client or work-product privileges protect the documents and communications at issue, and even if it could do so, it has waived those privileges by using its investigative and remedial efforts as a sword in this litigation.

### A.   Even if an applicable privilege attaches, Siemens has waived that privilege through its selective disclosures.

Siemens has refused to produce documents necessary for GE to determine (1) the scope of Siemens' dissemination and use of GE's confidential information and (2) the sufficiency of its remedial measures from the custodians responsible for overseeing its investigative and remedial efforts.

Even assuming, *arguendo*, that either the attorney-client or work-product privilege attaches to these custodians' documents,[7] Siemens has waived any applicable privilege by wielding its investigative and remedial measures as a sword in this litigation.  *See Jones*, 696 F.2d at 1072; *Hawkins*, 148 F.3d 379 at 384 n.4.  While there is no question that internal investigations conducted and overseen by attorneys may be privileged in many cases, the extreme and unusual circumstances here compel a finding of waiver.  Siemens' conduct in this litigation follows a simple pattern:  Siemens affirmatively places its investigative and remedial measures at issue to support its case—claiming that those measures foreclose relief to GE—then stonewalls GE on

---

[7] Because Siemens refuses to collect responsive documents from the individuals responsible for investigating Siemens' misappropriation of GE's trade secrets and developing and implementing remedial measures—or log specific assertions of privilege as to those documents—GE cannot evaluate the strength of Siemens' privilege claims.

privilege grounds to prevent GE from receiving related documents that would allow GE to evaluate the sufficiency of Siemens' remediation in curing ongoing harm to GE.  First the sword, then the shield.

Siemens has repeatedly invoked its investigative and remedial efforts to suggest that GE was not harmed by Siemens' misappropriation of its trade secrets or is not entitled to injunctive relief.  (*See, e.g.*, Am. Answer at 1, ECF No. 48 ("This is not a case that actually seeks to stop the use of confidential information at all.  GE knew for months before filing suit and before seeking a preliminary injunction that SEI had already locked down and prevented the use of GE's alleged confidential information—because SEI discovered the matter, voluntarily disclosed it to GE, and took steps to remove the information at issue from its files and systems."); *id.* ¶ 63 (admitting receiving GE's confidential information but stating that "SEI took remedial steps to remove the information at issue from its files and systems months before GE filed this Complaint."); PI Opp. at 7, ECF No. 43 ("GE's motion concerns year-and-a-half-old pricing information that no one at SEI is using because SEI has already taken steps to firewall relevant employees and remove the information at issue from its files and systems.")).

Siemens' claims about its investigative and remedial measures are not merely general and atmospheric.  Siemens has made explicit representations to GE and the Court regarding *specific* remedial steps, yet it conspicuously evades GE's requests for documents that would allow GE to evaluate those measures or provide necessary context.  For example, Siemens represented that it first "discovered" its misappropriation during an undisclosed "internal review" in 2020 as evidence that it remediated expediently.  (PI Opp. at 8, ECF No. 43; Am. Ans. ¶ 99, ECF No. 48.)  But Siemens now refuses to produce documents from the investigators' files about the review, how the misappropriation was discovered, and whether the remedial steps were sufficient given the

scope of the disclosure of GE's trade secrets.  (Tannenbaum Decl. Ex. 14, July 29, 2021 Email from Edward Babbitt at 2; Ex. 16, July 29, 2021 Email from Mark Gruetzmacher at 1–2; Ex. 17, August 4, 2021 Email from Alexandra I. Russell at 2.)  Likewise, Siemens has repeatedly touted its "disciplinary actions," (*see, e.g.*, PI Mot. Ex. 21, Oct. 30, 2020 Letter from Saul B. Shapiro at 7, ECF No. 32-25; PI Opp. 2, ECF No. 43; Am. Answer at 3, ECF No. 48), but it refused for months—apparently on privilege grounds—to tell GE which employees, if any, it terminated. (*See, e.g.*, PI Mot. Ex. 21, Oct. 30, 2020 Letter from Saul B. Shapiro at 7, ECF No. 32-25; PI Opp. Ex. 1, ECF No. 43-3.)  Now, it refuses to produce documents from the employees responsible for those disciplinary actions, which could shed light on why only six employees were fired while the employees most responsible for the misappropriation were retained or promoted.

Perhaps most egregiously, Siemens sent GE several iterations of its employee "firewall" during the preliminary injunction stage and—purportedly to demonstrate that its new and improved firewall precluded GE from injunctive relief—publicly filed an internal legal memorandum **sent directly from the "SEI Legal Department."**  (Bedont Decl. Ex. A at 23–25, ECF No. 43-1.)  But when pressed in March, Siemens refused to explain to GE why it implemented this entirely new firewall beyond a nebulous assertion that those employees "may have had database access" to GE's trade secrets.  (PI Reply Ex. 55, Mar. 22, 2021 Email from Patrick Haney, ECF No. 53-3.)   Now, it claims that the documents from the employees responsible for implementing and enforcing the firewall are privileged, despite the fact that it affirmatively proffered an actual internal attorney-client communication to support its case.

Finally, Siemens represented to GE, under oath, that its "screen share sessions" were "complete" in October of 2020, which was meant to assure GE that its trade secrets were removed from its systems.  (PI Mot. Ex. 21, Lam Decl. at 17 ¶¶ 29–30, ECF No. 32-25.)  Of course,

as explained above, that was not true; Siemens continued to conduct the screen share sessions into April 2021.  (Tannenbaum Decl. Ex. 1, Siemens R&Os to GE's 1st Set of Interrogs. at 3–5.)  However, Siemens refuses to produce documents from the employees responsible for overseeing those screen share sessions, which could reveal why its under-oath October 2020 representation was inaccurate and why additional remediation was required.

GE is entitled to evaluate and challenge Siemens' representations through a fair and robust discovery process.  If Siemens is allowed to selectively disclose fragments of information it considers beneficial to its case while withholding related but adverse information under the guise of privilege, it will successfully "entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."  *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003).  At bottom, GE—and this Court—should not be required to take Siemens at its word concerning the status of its investigative and remedial measures when Siemens has repeatedly put those very measures at issue and provided constantly shifting explanations of who had access to GE's confidential information and when.

**B.    Even if the Court concludes that the documents at issue are work product and that Siemens has not waived the work-product privilege, GE has a "substantial need" for any fact work product at issue.**

In the alternative, Siemens should be required to collect and produce fact work product, including interview memoranda, reports about the investigation's factual findings, and summaries of remedial steps taken (or not taken), from its investigators' files, redacted to exclude the mental impressions and legal opinions of Siemens' attorneys.

The work-product privilege encompasses both "fact" work product and "opinion" work product.  *See, e.g.*, *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005).  Fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, can be discovered upon a showing of

"(1) substantial need for the information; and (2) the unavailability of a 'substantial equivalent' of the information sought to be discovered." *Dupont*, 269 F.R.D. at 608 (citation omitted); *see* Fed. R. Civ. P. 26(b)(3). In determining the existence of substantial need, courts consider "(1) importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *Id.* at 608–09 (citation omitted).

Here, GE seeks, *inter alia*, memoranda and reports containing the basic underlying ***facts*** regarding how Siemens discovered, investigated, and attempted to remediate its employees' misappropriation of GE's trade secrets. These documents are critically important to GE's ability to prepare and prosecute its case, given that Siemens cites its remedial efforts as defenses to GE's harm and damages.

The facts GE seeks are not merely relevant; they are vital to GE for its case preparation. GE can neither evaluate the extent of its damages nor its need for permanent injunctive relief while Siemens refuses to come clean about the discrepancies in its story regarding its discovery and investigation of its misconduct, its handling of the screen share sessions, its decisions regarding the expanded firewall, and its rationale for its sharply varied disciplinary measures. *See Fed. Election Comm'n* v. *Christian Coal.*, 178 F.R.D. 61, 85 (E.D. Va. 1998) (substantial need found when documents were required to "buttress [plaintiff's] claims").

Moreover, there are simply no other avenues from which GE could seek the information at issue, as Siemens well knows. There is no independent source of such information, and there can be no "substantial equivalent" to the information GE seeks to discover. Only Siemens' investigators are likely to maintain documents that could provide answers with respect

18

to the aforementioned topics.  The only other potential source of some of this information would have been the Siemens witnesses who were the subject of the investigation, but those witnesses have either claimed memory loss of have been unwilling to answer basic questions at deposition. For example, Mr. Herlitzka's refused to provide a straightforward answer as to whether he understood GE's bid information to be confidential.  (*E.g.*, Tannenbaum Decl. Ex. 18, Herlitzka Dep. Tr. 15:5–17:10 ("█████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████");  *see also supra*, at 11–12 (citing similar testimony from Mr. Hillen.).  And when Siemens' witnesses have seemed prepared to testify substantively about anything regarding the investigations, Siemens' attorneys have been quick to object and direct them not to answer based on assertions of privilege.  *See supra*, at 9–11. Faced with this combination of forgetfulness and refusals to answer basic questions, GE has no means to obtain the information it needs without access to Siemens' investigators' files.

GE cannot be expected to evaluate and potentially challenge  the scope and efficacy of Siemens' investigative and remedial measures (and the accuracy of Siemens' representations about those measures) without access to the documents that would support or cast doubt on Siemens' claims.  Indeed, the truth-seeking process is harmed when "unique, relevant information is withheld from a party that never had an opportunity to obtain the information on its own." *F.T.C.* v. *Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 156 (D.C. Cir. 2015).  Yet that is exactly

19

what Siemens hopes this Court will allow.  For that reason—and all the reasons mentioned above—GE's motion to compel should be granted.

> ### C.   Siemens' claim that collecting and producing documents from its employees and agents who spearheaded its investigation and remediation efforts would be unduly burdensome lacks merit.

Finally, Siemens' burden objections to collecting and producing documents from its investigators' files lack merit.

A party objecting to producing documents on grounds of "burdensomeness or breadth . . . must do more to carry its burden than make conclusory and unsubstantiated arguments."  *Stoney Glen, LLC* v. *S. Bank & Trust Co.*, No. 2:13cv8-HCM-LRL, 2013 WL 5514293, at *3 (E.D. Va. Oct. 2, 2013).  In evaluating whether an objecting party adequately demonstrated burden, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Siemens has conclusorily asserted that collecting and reviewing documents from its investigators' files would be "unreasonable, unduly burdensome, and disproportionate to the needs of the case given the high volume of privileged documents that counsel would have." (Tannenbaum Ex. 20, July 25, 2021 Email from Mark Gruetzmacher at 1–2.)  But because Siemens has waived any privilege that may have applied to the documents GE seeks, this objection is meritless.

Moreover, even if some of the documents GE seeks are protected by attorney-client privilege or contain opinion work product, Siemens cannot meet its burden of demonstrating that it would be too burdensome to review the documents and produce non-privileged documents and fact work product, including interview memoranda, reports about the investigation's factual

findings, and summaries of remedial steps taken (or not taken).  As explained above, Siemens'

investigative and remedial measures are core issues in this litigation.  Without the documents at

issue, GE has little or no ability to evaluate Siemens' representations about the sufficiency of its

investigative and remedial measures.  Production of the documents is critical to resolving these

issues.  And the cost of reviewing and producing these documents is likely dwarfed by the millions

of dollars in controversy, and Siemens does not lack for resources.  Accordingly, the likely benefit

of the discovery GE seeks greatly outweighs Siemens' burden or expense.  *Cf. Parkdale Am., LLC*

v. *Travelers Cas. & Surety Co. of Am.*, No. 3:06CV78-R, 2007 WL 4165247, at \*12–14 (W.D.N.C.

Nov. 19, 2007) (ordering production of fact work product and rejecting burden arguments in light

of the amount in controversy, the parties' apparent resources, and the importance of the proposed

discovery).

### D. The scope of GE's request is targeted to documents and information about Siemens' internal investigation and remedial measures, not privileged materials about Siemens' litigation strategy.

GE seeks only those documents necessary to determine the scope of Siemens'

misappropriation of GE's trade secrets, the scope of Siemens' investigation, the sufficiency of

Siemens' remedial measures, and the accuracy of Siemens' representations on these topics.  At the

very least, GE is entitled to interview memoranda, reports about the investigation's factual

findings, and summaries of remedial steps taken (or not taken), all of which are well within the

scope of its outstanding RFPs on these issues.

Because Siemens has waived privilege over the subject matters of its internal

investigations and its remedial measures, GE respectfully requests that the Court order Siemens to

produce all relevant documents and communications concerning (i) the initial investigation that

uncovered Siemens' misappropriation of GE's trade secrets, (ii) the subsequent internal

investigation into the misappropriation of GE's trade secrets, and (iii) the remedial measures taken

by Siemens in response to the findings of the latter investigation.  GE does ***not*** seek documents and communications concerning Siemens' legal strategy in connection with this lawsuit generally.

        In the alternative, if the Court concludes that Siemens has not waived privilege and that the documents GE seeks constitute attorney work product, GE respectfully requests that the Court order Siemens to produce all interview memoranda from Siemens' internal investigation, any reports, summaries, or memoranda about the investigation's findings, and all reports, summaries, or memoranda about the remedial measures taken by Siemens, redacted to exclude the mental impressions and legal opinions of Siemens' attorneys.

### CONCLUSION

        For the foregoing reasons, GE respectfully requests that the Court grant its motion to compel.

August 16, 2021

Respectfully submitted,

GENERAL ELECTRIC COMPANY

By: */s/ Edward E. Bagnell, Jr.*

Dana D. McDaniel (VSB No. 25419)
Edward E. Bagnell, Jr. (VSB No. 74647)
Spotts Fain, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2000
Fax: (804) 697-2100
dmcdaniel@spottsfain.com
ebagnell@spottsfain.com

Brad S. Karp (*pro hac vice*)
Brette Tannenbaum (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
bkarp@paulweiss.com
btannenbaum@paulweiss.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300
kdunn@paulweiss.com
jrhee@paulweiss.com

*Attorneys for Plaintiff General Electric Company*

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on the 16th day of August 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

 /s/ *Edward E. Bagnell, Jr.*
Edward E. Bagnell, Jr. (VSB No. 74647)
ebagnell@spottsfain.com
Spotts Fain, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2065
Fax: (804) 697-2165

*Counsel for General Electric Company*